UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TOMMY E. LAMPLEY,           )
                            )
        Plaintiff           )
                            )
    vs.                     )    CAUSE NO. 3:05-CV-808 RM
                            )
JOHN PERNEY,                )
                            )
        Defendant           )

OPINION AND ORDER

John Perney, by counsel, filed a motion seeking summary judgment against Tommy E. Lampley, a *pro se* prisoner, because he did not exhaust his administrative remedies. "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. Outlaw v. Newkirk, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 322-323 (1986).

Mr. Lampley filed a motion to dismiss the summary judgment motion. He also filed a memorandum in support, a declaration, and many exhibits. He argues that because of his injuries, he was physically incapable of filing a grievance within the then applicable 48 hour time limit. Nevertheless, in his declaration, made under penalty of perjury, he states that he twice attempted to file grievances later.

> 6.) On November 16, 2005, and on November 22, 2005 I filed grievances on these dates at Wabash Valley Corrections, and these grievances were sent back to me unfiled, unprocessed and rejected, and no log # on them. I filed them about the October 24, 2005 assault, and against defendant for allowing the assault to happen.
> The grievance that was filed out, and submitted on November 16, 2005, it was sent back with no response, and unfiled, and unprocessed with a memo attached to it stating that I could not file a grievance against someone at Indiana State Prison that was not at Wabash Valley. It stated that the grievance specialist would not get involved with a complaint against staff at ISP. The grievance specialist at Wabash Valley rejected my attempt to exhaust about the October 24, 2005 incident by not processing it, and not filing it, and not giving it a case number, rejecting it.
> So on November 22, 2005, the plaintiff filed another step-one grievance at Wabash Valley, and he turned it in to the unit counselor to send it to the grievance specialist. Then grievance was sent back with no log number, un-processed, and un-filed, and rejected. The unit counselor, on D-Segregation was the person rejected it, and stated that I wasn't allowed to file a grievance against another officer at another facility (see Exhibits #10 and #11, the grievances that were rejected, unprocessed and unfiled in to the grievance system, and the memo attached.)

DE 161 at 4.

Though Mr. Lampley presents these grievances as evidence that he tried to exhaust his administrative remedies, they are, by his own description, untimely and filed at the wrong facility. "To exhaust remedies, a prisoner must file complaints and appeals in the

place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Therefore those grievances do not demonstrate either that Mr. Lampley exhausted his administrative remedies or that he was prevented from doing so.

Nevertheless, even if they were not untimely and filed at the wrong facility, "[a] plaintiff cannot . . create an issue of material fact by submitting an affidavit that contradicts an earlier deposition." Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 759 (7th Cir. 2006). Neither can he do so in contradiction of his prior sworn pleading. Mr. Lampley filed three complaints, all signed under penalty of perjury. In each case, he used a form that asked, "did you file a grievance about the things you are suing about?" In none of his three complaints did he ever answer "yes." On the first complaint, filed one month after he claims to have filed those grievances, he marked "no" and explained that he didn't file a grievance because he was injured and then recuperating. On the other two, though he did not mark the box in front of "no", he nevertheless recounted the same basic facts with slightly different wording on the lines for explaining why he did not file a grievance.

Mr. Lampley has attached the two grievances he claims to have submitted in November 2005. The first tendered grievance names Officer Perney six times.[1] The second

---

[1] The tendered grievance dated November 16, 2006 states:
I want to grieve: Ofc. Perney
   This is untimely because I got transferred and stabbed. On October 27, 2005, I was transferred from the Indiana State Prison to Wabash Valley Corrections Infirmary. I was stabbed multiple times by inmate Greer on October 24, 2005 because Ofc. Perney did not follow the IDU post orders, and not securing inmate Greer back inside his cell when his recreation time was up. I spoke to Ofc. Perney about wanting to speak to his Lt. because inmate Greer had been calling me racial names and saying he was gonna stab me with a

3

tendered grievance names him four times.² Nine of the ten times the name is spelled "Perney" and only once is it misspelled, "Perny." In every instance, Perney is clearly identified as a last name. Normally this wouldn't be surprising, but when Mr. Lampley signed his original complaint, barely a month later on December 23, 2005, he didn't name Officer Perney. Rather, he sued "Defendant John Doe".³

---

knife on October 24, 2004. Ofc. Perney told me not to worry and then said he was gonna contact someone to let them know. He never came back or told anyone because he started recreation on the eastside of IDU, and he let out group #6 first with inmate Greer in it. Then when they time was up he was suppose to secure them back in they cell, but he allowed inmate Greer to hide in the shower so he could attack me with a knife. I personally watched Ofc. Perney do a security check, and check the cells upstairs that he let out first, then he checked the shower and begun to talk to inmate Greer in the shower. I knew he knew right then that Greer was in the shower and not in his cell. He set me up! He did not protect me.
     I want to be paid $30,000 in damages for my pain and suffering, Ofc. Perney should be prosecuted for his role in allowing assault. I just want damages for this incident.
DE 161-13 (emphasis added).

² The tendered grievance dated November 22, 2006 states:
I want to grieve: Ofc. Perny (I.S.P.)
     On October 27th, 2005 I was transferred to the infirmary from the Indiana State Prison in a wheelchair. I had serious injuries when I got stabbed at I.S.P. by another inmate because Ofc. Perney did not follow the post orders, and did not secure inmate Greer back inside his cell on the eastside of IDU October 24th, 2005 during the day shift. I was in group #1 and inmate Greer was in group #6 on the eastside. I missed 48 hr. I couldn't file at I.S.P. because of my serious injuries, and transfer. This Ofc. Perney allowed this assault on me to happen, because he knowingly allowed another inmate to wait in the shower with a knife so he could assault me with a knife when my group came out. I truly believe that he breached security by not securing inmate back inside his cell during security check, and before he let out my group. And he violated the policy and procedure of disciplinary segregation, and breached his job duties . . . and he is liable for the assault and the injuries happening to me because he knowingly broke the rules. I could not file in 48-hour at I.S.P. because of injuries.
     For my pain and suffering, and my emotional distress, mental pain, and humiliation . . . I want to be given $20,000 for my damages sustained. And Ofc. Perney should be investigated so look at the video tape of the range on eastside of IDU.
DE 161-14 (emphasis added, ellipsis in original).

³ The original complaint alleged:
     Defendant John Doe was assigned to work IDU Eastside recreation October 24, 2005. Defendant John Doe owed plaintiff a duty of reasonable care to protect him from assaults of other prisoners. Defendant breached that duty by failing to secure inmates back into they cell after they half-hour of recreation was over, and when he failed to sit on cat-walk in chair

In response to the original complaint, Mr. Lampley was granted leave to proceed against the superintendent of the Indiana State Prison "for the sole purpose of discovery to identify the unknown correctional officer who worked IDU Eastside recreation on October 24, 2005 and rolled the bars for the second recreation group at approximately 9:50 a.m. and subsequently signaled other guards to intervene in the attack on Mr. Lampley . . .." DE 5 at 8. Subsequently, Mr. Lampley filed an amended complaint naming Purney Edwards. In this complaint, the name "Perney" is a first name spelled with a "u". DE 16 at 2. The court granted Mr. Lampley leave to proceed against Purney Edwards (DE 17 at 4), but when service on Mr. Edwards proved impossible (DE 19), the court ordered,

> Superintendent Ed Buss to appear and respond to discovery for the sole purpose of identifying the name and address for service of process of the unknown correctional officer who worked IDU Eastside recreation on October 24, 2005 and rolled the bars for the second recreation group at approximately 9:50 a.m. and subsequently signaled other guards to intervene in the attack on Mr. Lampley . . ..

DE 22 at 2-3. Mr. Lampley then sent a discovery request which asked, "this unknown Ofc. has been fired at ISP who goes by the name of 'Perny?'" DE 29 at 2. The response stated,

---

and monitor inmates who were out of they cells, per Defendant John Doe who is Lt. (Who is supervisor over the whole unit). Defendant <u>John Doe</u> who worked IDU Eastside had knowledge that a inmate in the first recreation group didn't lock back into his cell and was waiting in the shower to harm Plaintiff who was to come out in the next group. Defendant had entered the range from a side door connected to some bars from the cat-walk Defendant <u>John Doe</u> then approached the back shower, and engaged in conversation with inmate in shower in the first recreation group. Then the Defendant had full knowledge that a inmate was in the shower with intentions to harm me. – Defendant then exited the same way he entered the range of Eastside, and glanced over at plaintiff cell #130 with a grin on his face. Then when Defendant got back up front, he had knowledge that he had left that inmate from the first recreation group hide and wait, inmate in the shower. Defendant never said a word about it to unit officers that worked on the first shift with him about inmate in shower.

DE 1 at 3-4 (emphasis added).

"John S. Perney [w]as responsible for rolling the IDU Eastside bars for the second recreations group on October 24, 2005." DE 31 at 1. As a result, on May 23, 2006, Mr. Lampley signed and then filed a second amended complaint which finally named John S. Perney.

Mr. Lampley would have this court believe that in November 2005, he knew the name and proper spelling for the defendant John Perney. Yet he would also have this court believe that a month later he forgot that name and had to spend five months struggling to piece together the name of this defendant whom he accuses of being the accomplice and collaborator with his attacker. He would also have this court believe that only a month after filing two grievances, he forgot that he had done so.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, ___; 127 S. Ct. 1769, 1776 (2007) (citations, quotation marks, ellipsis omitted). It isn't opposing sides who tell two different stories in this case; it is Mr. Lampley who is telling two different stories. Though it appears possible that these two grievances were not written and submitted in November 2005, resolving that question is beyond the scope of the issues necessary for ruling on this summary judgment motion. It is enough that Mr. Lampley is contradicting his prior sworn statements by presenting a set of facts on summary judgment which are blatantly contradicted by the record. Moreover,

and dispositively, these two grievances are not relevant because they were untimely and filed at the wrong facility.

Beyond those two grievances, the record contains no indication that Mr. Lampley tried to grieve these issues under either of the two grievance policies that were available to him. From October 24, 2005 until November 30, 2005, the old grievance policy stated that a "staff or another offender may assist an offender who cannot write a complaint/grievance/appeal him/herself by writing the complaint/grievance/appeal for the offender." DE 161-2 at 9. Though Mr. Lampley states that he was injured and unable to write a grievance himself,[4] he does not state that he asked any staff to write a grievance for him even though he states that he

> put Sgt. Hough on notice at the Indiana State Prison on October 24, 2005 about the defendant knowing inmate Greer was in the showers and that defendant helped set plaintiff up to be attacked. This told to Sgt. Hough before plaintiff got transferred to the outside hospital of defendant Perney's involvement.

DE 161 at 5. Neither does Mr. Lampley provide an explanation as why he was unable to ask Sgt. Hough to write the grievance for him. Therefore he did not exhaust the available administrative remedies under the old grievance policy, nor was he unable to do so.

The new grievance policy took effect December 1, 2005. It stated that, "[t]he Facility Head or Departmental Offender Grievance Manager may consider a grievance or grievance appeal submitted outside the noted timeframes if it appears that there was an appropriate

---

[4] "At the time of the incident on October 24, 2005, the plaintiff could not write because his writing hand (left wrist) had nerve damages, and tendon damage, and had been cut to the bone, and had been stitched up to close the wound when he was at St. Anthony's hospital on the day the assault happened." DE 161 at 6.

reason for the delay." DE 158-2 at 26. Unlike the old policy, the new grievance policy provides that "An offender may pursue or originate a formal written grievance at a facility from which he/she has been transferred . . . [i]f an informal or formal grievance was initiated prior to the transfer or release . . .." DE 158-2 at 29. Mr. Lampley initiated an informal grievance under the new policy when he spoke to Sgt. Hough before he was transferred.[5] Mr. Lampley clearly was able to file a grievance under the new policy because he filed an unrelated grievance on December 15, 2005.[6] Despite his physical capability, he does not assert that he ever asked to file a late grievance as to these issues. Therefore he did not exhaust the available administrative remedies under the new grievance policy, nor was he unable to do so.

For the foregoing reasons, the motion for summary judgment (docket # 157) is GRANTED and this case is DISMISSED WITH PREJUDICE because Tommy E. Lampley did not exhaust his administrative remedies.

SO ORDERED.

ENTERED: December _1_, 2008

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

---

[5] Under the new grievance policy, an informal grievance is initiated by "discussing [the problem] with his/her counselor or another staff member in the housing unit who may be able to assist in the resolution of the problem." DE 158-2 at 17.

[6] "On December 15, 2005: Plaintiff filed a step-one grievance . . ." DE 161 at 8.